**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIRGIL HARRY MCFARLAND, | CASE NO. EDCV 18-1646 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Virgil Harry Mcfarland ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented pursuant to 28 U.S.C. § 636(c) to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 9-11). For the reasons stated below, the decision of the Commissioner is

REVERSED, and this case is REMANDED for further administrative
proceedings consistent with this decision.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must
demonstrate a medically determinable physical or mental impairment
that prevents the claimant from engaging in substantial gainful
activity and that is expected to result in death or to last for a
continuous period of at least twelve months. Reddick v. Chater,
157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).
The impairment must render the claimant incapable of performing
work previously performed or any other substantial gainful
employment that exists in the national economy. Tackett v. Apfel,
180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.
§ 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an
Administrative Law Judge ("ALJ") conducts a five-step inquiry. 20
C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful
     activity? If so, the claimant is found not disabled. If
     not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the
     claimant is found not disabled. If so, proceed to step
     three.

(3) Does the claimant's impairment meet or equal one of the
        specific impairments described in 20 C.F.R. Part 404,
        Subpart P, Appendix 1?  If so, the claimant is found
        disabled.  If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If
        so, the claimant is found not disabled.  If not, proceed
        to step five.

(5) Is the claimant able to do any other work?  If not, the
        claimant is found disabled.  If so, the claimant is found
        not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-
(g)(1), 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four
and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an
affirmative duty to assist the claimant in developing the record
at every step of the inquiry.  Id. at 954.  If, at step four, the
claimant meets his or her burden of establishing an inability to
perform past work, the Commissioner must show that the claimant
can perform some other work that exists in "significant numbers"
in the national economy, taking into account the claimant's
residual functional capacity ("RFC"), age, education, and work
experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at
721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner
may do so by the testimony of a vocational expert ("VE") or by

3

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

### III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 15-24). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2013, the alleged onset date. (AR 17). At step two, the ALJ found that Plaintiff's lumbar spine degenerative disc disease, degenerative disc disease of the cervical spine, lumbar and cervical spine stenosis, and degenerative joint disease of the hips and right shoulder are severe impairments.[1] (AR 17).

---

[1]    The ALJ also found that Plaintiff's medically determinable physical impairments of human immunodeficiency virus (HIV), gastroesophageal reflux disease (GERD), pancreatitis, hiatal hernia, and ulcerative colitis do not limit Plaintiff's ability to perform basic activities and are therefore nonsevere. (AR 17-18). The ALJ further found that Plaintiff's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore nonsevere. (AR 18-19).

4

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 19).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform a limited range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except:[2]

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; he can stand and walk for six hours in an eight hour workday with required breaks as allowed under California law; he can sit for six hours in an eight hour workday with required breaks as allowed under California law; he can't push and pull within the aforementioned lift/carry weight limits; he can occasionally climb ramps and stairs; he cannot climb ladders, ropes, or scaffolds; and he can occasionally balance, stoop, kneel, crouch, and crawl.[3]

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3] While the ALJ characterizes this RFC as a limited range of sedentary work (AR 19), it is more akin to a limited range of light work. See 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent

1   (AR 19-20).  At step four, the ALJ found that Plaintiff is capable

2   of performing past relevant work as a database support employee,

3   accounting clerk, and office manager, all as generally performed

4   in the regional and national economy.  (AR 23-24).  Accordingly,

5   the ALJ found that Plaintiff was not under a disability as defined

6   by the Act from May 1, 2013, through the date of the decision.  (AR

7   24).

8

9                              **IV.**

10                        **STANDARD OF REVIEW**

11

12      Under 42 U.S.C. § 405(g), a district court may review the

13  Commissioner's decision to deny benefits.  "[The] court may set

14  aside the Commissioner's denial of benefits when the ALJ's findings

15  are based on legal error or are not supported by substantial

16  evidence in the record as a whole."  Aukland v. Massanari, 257 F.3d

17  1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see

18  also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing

19  Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

20

21      "Substantial evidence is more than a scintilla, but less than

22  a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v.

23  _____

24  lifting or carrying of objects weighing up to 10 pounds.  Even
    though the weight lifted may be very little, a job is in this
25  category when it requires a good deal of walking or standing, or
    when it involves sitting most of the time with some pushing and
26  pulling of arm or leg controls.  To be considered capable of
    performing a full or wide range of light work, you must have the
27  ability to do substantially all of these activities.").  Upon
    remand, the ALJ should clarify this apparent discrepancy.
28

                                6

Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

**A.    The ALJ's Reasons For Rejecting Treating Physicians' Opinions Are Not Supported By Substantial Evidence**

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an

7

examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); accord Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'"  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Bayliss v. Barnhart,

427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.; see also Reddick, 157 F.3d at 725 (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831 (emphasis in original). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

1. **Dr. Sherman**

Plaintiff began treating with Scott P. Sherman, Ph.D., a licensed psychologist, in May 2012. (AR 591). In May 2014, after

seeing Plaintiff on a bi-weekly basis for a total of 42 visits, Dr. Sherman summarized his findings.[4] (AR 591-93). Plaintiff's current diagnosis was major depression, recurrent and severe. (AR 591). He has struggled with serious depression for the majority of his adult life, which has been exacerbated by recent losses of family members and close friends and his own physical illnesses, including HIV, diverticulitis, ulcerative colitis, and chronic pancreatis. (AR 591-92). Plaintiff's "physical pain and emotional pain are so preoccupying to him that his concentration is badly impacted [and] his memory is now badly impaired and his ability to cope with any minor stress [is] severely limited, if at all." (AR 592-93). Dr. Sherman opined that given his chronic medical conditions and the degree of loss and depression they create, Plaintiff's "prognosis is poor." (AR 593). "The prospect of [his physical] illnesses contribute greatly to his depression and given the nature and extent of his losses along with his medical conditions[,] his psychological well being is very limited and he will in all likelihood deal with major depression for his entire life." (AR 593).

On July 20, 2014, Dr. Sherman submitted a Mental Medical Source Statement. (AR 608-13). Dr. Sherman described the clinical findings that demonstrate the severity of Plaintiff's mental impairment: confusion, episodes of rage, an inability to complete simple tasks, and an inability to make decisions. (AR 608).

---

[4] Dr. Sherman recommended that Plaintiff be seen weekly for treatment, but he was unable to afford it. (AR 591).

Plaintiff's signs and symptoms include anhedonia, decreased energy, inappropriate affect, feelings of guilt or worthlessness, impairment in impulse control, persistent anxiety, mood disturbance, difficulty concentrating, apprehensive expectation, emotional withdrawal and lability, easy distractibility, memory impairment, and sleep disturbance. (AR 609). Dr. Sherman opined that as a result of Plaintiff's severe depression, he is seriously limited in his ability to do work-related activities on a day-to-day basis in a regular work setting. (AR 610-11). He further concluded that Plaintiff has no stress tolerance for the demands of work, would likely miss more than four days of work per month, and would be unable to concentrate for 25% of a workday or more.[5] (AR 612-13).

On July 21, 2014, Dr. Sherman reported that Plaintiff attends psychotherapy on a weekly basis, "which is a change from every other week basis as his condition is worse and the depression more severe." (AR 615). Dr. Sherman found that multiple recent, profound, life-altering losses have exacerbated Plaintiff's major depression: the death of his mother, the loss of a long-term relationship, the loss of his health from HIV, and the loss of his best friend for 30 years. (AR 615). Dr. Sherman summarized the clinical findings that support his functional impairment assessments: limited concentration, poor focus, easily distracted and confused, memory loss, emotional lability, and frequent bouts

---

[5]    At Plaintiff's hearing, the ALJ stipulated that an individual with Plaintiff's RFC and even a 10% limitation in concentration, persistence, or pace would be unemployable.  (AR 68).

of crying alternating with periods of rage. (AR 615-16). He opined that Plaintiff is extremely limited in his ability to adapt to changes and stressors in the environment without becoming incapacitated, has great difficulty in completing tasks both simple and more complex, and has impaired decision-making abilities that are hindered by low self-esteem and lack of confidence. (AR 616). Dr. Sherman diagnosed major depressive disorder, recurrent and severe, and assigned a Global Assessment of Functioning ("GAF") score of 48.[6] (AR 616).

On September 1, 2015, Dr. Sherman completed a Mental Capacities Evaluation. (AR 727). He diagnosed major depression, recurrent and severe, exacerbated by HIV, disc issues and pancreatitis, and assigned a GAF score of 42. (AR 727). Plaintiff's signs and symptoms included pervasive loss of interest in almost all activities, feelings of guilt or worthlessness, generalized persistent anxiety, emotional withdrawal or isolation, difficulty thinking or concentrating, recurrent and intrusive

---

[6] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM-IV). According to DSM-IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Id. 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Garrison, 759 F.3d at 1003 n.4.

recollections of a traumatic experience (deaths of his best friend and mother), thoughts of suicide, and mood disturbance. (AR 727). Dr. Sherman opined that Plaintiff's mental impairments would cause him to be off-task for at least 25% of the workday. (AR 727). He concluded that Plaintiff has marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and extreme difficulties in maintaining concentration, persistence, or pace. (AR 727).

On September 1, 2015, Dr. Sherman submitted a second Mental Medical Source Statement. (AR 728-33). Dr. Sherman's clinical findings included lack of concentration, emotional lability, sadness, rage, and severe anhedonia. (AR 728). Plaintiff's signs and symptoms included pervasive loss of interest in almost all activities, appetite disturbance, decreased energy, thoughts of suicide, inappropriate affect, feelings of guilt or worthlessness, impairment in impulse control, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience (deaths of his best friend and mother), apprehensive expectation, emotional withdrawal or isolation, emotional lability, easy distractibility, memory impairment, and sleep disturbance. (AR 729). Dr. Sherman opined that as a result of Plaintiff's severe depression, he is seriously limited in his ability to do work-related activities on a day-to-day basis in a regular work setting. (AR 730-31). He further concluded that Plaintiff has no stress tolerance for the demands of work, would likely miss more than four days of work per

month, and would be unable to concentrate for 25% of a workday or
more.  (AR 732-33).

On June 20, 2016, Dr. Sherman reported that Plaintiff remains
in weekly psychotherapy sessions and continues to struggle with
functional impairments due to his depression.  (AR 700).
Plaintiff's functional impairments include limited concentration,
poor focus, easily distracted and confused, difficulty with both
simple and complex problem solving, and impaired memory.  (AR 700).
Recent physical health conditions "have added a new layer to his
depression, creating and even deeper depression with a more severe
sense of hopelessness."  (AR 700).

The ALJ gave "little weight" to Dr. Sherman's opinions,
concluding that they "were based almost entirely on [Plaintiff's]
subjective complaints, as the medical record indicated very little
in the way of objective clinical findings to support such highly
restrictive functional limitations.  There was no evidence of any
mental status examinations relating to his treatment of [Plaintiff]
in the medical record."  (AR 19).  The ALJ's assessment is contrary
to law and not supported by substantial evidence.

First, while Dr. Sherman's opinions were based in large part
on Plaintiff's self-reports, Dr. Sherman also conducted multiple
clinical interviews and made clinical findings.  (AR 608, 615-16,
700, 727-29).  These were objective findings and cannot be
discounted as mere self-reports. Buck v. Berryhill, 869 F.3d 1040,
1049 (9th Cir. 2017) (conducting clinical interviews and making

clinical findings "are objective measures and cannot be discounted as a 'self-report'").

Defendant emphasizes that Dr. Sherman's opinions were only "summaries" of Plaintiff's medical record. (Dkt. No. 21 at 5). These "summaries," nevertheless, referred to the clinical findings, symptoms, and signs that Dr. Sherman observed in the weekly sessions that he had with Plaintiff. (AR 608, 615-16, 700, 727-29). If the ALJ believed that these summaries were insufficient, he had an obligation to develop the record. In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered. Tonapetyan, 242 F.3d at 1150; Smolen, 80 F.3d at 1288. The ALJ has a basic duty to inform himself about facts relevant to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1, (1983) (Brennan, J., concurring). The "ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); accord McLeod v. Astrue, 640 F.3d 881, 885 & n.3 (9th Cir. 2011). Here, if the ALJ considered Dr. Sherman's opinions ambiguous or inadequate, he should have assisted Plaintiff in securing the underlying records.

Second, mental health assessments necessarily rely upon a patient's self-reports. "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints

have been properly discounted." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citation omitted). Nevertheless, while "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields," psychiatric evaluations "should not be rejected simply because of the relative imprecision of the psychiatric methodology." Buck, 869 F.3d at 1049 (citation omitted). Indeed, the nature of psychiatry is that mental assessments "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." Id.; see Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) ("unlike a broken arm, a mind cannot be x-rayed"). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." Buck, 869 F.3d at 1049. In the context of this case, therefore, Dr. Sherman's partial reliance on Plaintiff's self-reports was not a valid reason for rejecting Dr. Sherman's opinions. See id.

Third, Dr. Sherman's opinions were consistent with the findings of Gary Levinson, M.D., Plaintiff's treating psychiatrist. In June 2016, Plaintiff presented with symptoms of fatigue, anxiety with persistent worry about panic attacks, chronic depression, and insomnia. (AR 1181). Dr. Levinson conducted a psychometric depression scale test (PHQ-9), which indicated that Plaintiff suffers from moderately severe depression.[7] (AR 1184). Dr.

_____

[7] The PHQ-9 "is a 9-question instrument given to patients in a primary care setting to screen for the presence and severity of depression." <https://en.wikipedia.org/wiki/PHQ-9> (last visited

16

Levinson assessed severe recurrent major depression and panic disorder without agoraphobia. (AR 1185). In August 2016, Dr. Levinson conducted a second PHQ-9 test, which found that Plaintiff's depression had worsened to "severe." (AR 1186-87). The decision below neither acknowledged nor assessed Dr. Levinson's clinical findings. "[A]n ALJ may not pick and choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant." <u>Cox v. Colvin</u>, 639 F. App'x 476, 477 (9th Cir. 2016) (citing <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1164 (9th Cir. 2014)). Defendant contends that "a psychometric depression scale value do[es] not command a finding of severe mental impairment." (Dkt. No. 21 at 2). However, while the psychometric depression scale value may not be <u>dispositive</u>, the ALJ still has an obligation to <u>consider and evaluate</u> evidence favorable to Plaintiff.

Dr. Sherman's opinions were also supported by Jack E. Bentham, Ph.D., a medical expert who answered interrogatories at the Agency's request. (AR 1217-21). Dr. Bentham reviewed the medical record, especially Dr. Sherman's opinions, and concluded that Plaintiff has major depression, recurrent and severe. (AR 1217-19). He opined that Plaintiff has marked restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace, and repeated episodes of decompensation, each of extended duration. (AR 1220). Dr. Bentham also completed a medical source statement

April 24, 2019). Plaintiff's score of 19 was on the cusp between moderately severe and severe depression. <u>See</u> <u>id.</u>

of ability to do work-related mental activities. (AR 1222-23). He opined that Plaintiff has marked difficulties in the ability to understand, remember and carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, and respond appropriately to usual work situations and to changes in a routine work setting, and moderate difficulties in the ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with supervisors or co-workers. (AR 1222-23).

The ALJ gave "little weight" to Dr. Bentham's opinion, finding that he "relied entirely on the subjective opinions of the treating psychologist, Dr. Sherman." (AR 19). The ALJ concluded that there was "a total lack of support for the opinions expressed by him and . . . Dr. Sherman.). (AR 19). However, as discussed above, Dr. Sherman's opinions were based not only on Plaintiff's self-reports but also on Dr. Sherman's multiple clinical interviews and clinical findings. Dr. Sherman's partial reliance on Plaintiff's self-reports was not a valid reason for rejecting Dr. Sherman's opinions. Further, Dr. Bentham based his opinion not only on Dr. Sherman's reports but also on Dr. Levinson's clinical tests (AR 1218), which corroborated Dr. Sherman's findings.

The ALJ relied on the opinion of another medical expert, David Jarmon, Ph.D., who testified at Plaintiff's hearing. (AR 73-81). Dr. Jarmon found little "objective evidence in the file to support [Dr. Sherman's] conclusion." (AR 74). The ALJ gave Dr. Jarmon's

opinion "significant weight." (AR 18). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Instead, the opinions of a nonexamining physician may serve as substantial evidence only when the opinions "are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Finally, even if the evidence prevented the ALJ from giving Dr. Sherman's opinions controlling weight, the ALJ must consider the length of Dr. Sherman's treating relationship, the frequency of examination by Dr. Sherman, and the nature of the treatment relationship between Plaintiff and Dr. Sherman in determining the weight to give Dr. Sherman's opinions. Orn, 495 F.3d at 631; see also 20 C.F.R. §§ 404.1527(d)(2) (listing factors to consider), 416.927(d)(2) (same). Thus, the decision below should have explicitly considered that Dr. Sherman, a licensed psychologist, treated Plaintiff on a near-weekly basis from May 2012 until at least June 2016. The lengthy treating relationship between Dr. Sherman and Plaintiff should be considered.

**2.   Dr. Scheibel**

Plaintiff began treating with Steven F. Scheibel, M.D., in January 2014, for symptoms related to HIV. (AR 570). In February 2014, Dr. Scheibel noted objective findings of fatigue, flat

affect, anxiety, depression, panic attacks, and insomnia. (AR 570-71). He referred Plaintiff to Dr. Sherman. (AR 571).

In December 2015, Dr. Scheibel submitted a physical medical source statement. (AR 671-74). Along with opining about Plaintiff's physical impairments, Dr. Scheibel noted that Plaintiff's symptoms include depression, insomnia, anxiety, irritability, and emotional stability. (AR 671-72). He opined that symptoms related to Plaintiff's chronic depression, anxiety, and irritability would be severe enough to interfere with the attention and concentration needed to perform even simple work tasks and make it likely that he is incapable of even "low stress" work. (AR 674). Dr. Scheibel concluded that Plaintiff's chronic emotional issues as well as his chronic pain and fatigue "greatly limit [his] ability to work on a sustained basis." (AR 674).

The ALJ gave Dr. Scheibel's opinion "little weight." (AR 23). With regard to Plaintiff's mental impairments, the ALJ noted that Dr. Scheibel "is not a psychiatrist, psychologist, or mental health expert, and thus, his opinions were not credible or reliable and were given little weight." (AR 23).

The Court disagrees with the ALJ's conclusion on this point. As a physician, Dr. Scheibel is an "acceptable medical source." Thus, he is capable of providing a medical opinion that the Agency must consider. 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) . . . ."). While the ALJ may give Dr.

Scheibel's opinion less weight because he is not a mental health specialist, he cannot wholly reject it on this ground. See Lester, 81 F.3d at 833 (treating physician's opinion as to claimant's mental function may not be disregarded merely because he is not a mental health specialist); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (finding no requirement in the regulations that psychiatric evidence must be offered by a Board-certified psychiatrist); Nguyen v. Barnhart, 170 F. App'x 471, 473 (9th Cir. 2006) ("the ALJ erred in rejecting Dr. Sidrick's opinion because she based her assessment of Nguyen's limitations in part upon his mental condition even though Dr. Sidrick is not a psychiatrist"); see also Holohan, 246 F.3d at 1202 (noting that "the regulations give more weight . . . to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists") (citing 20 C.F.R. § 404.1527(d)(5)); accord Agatucci v. Berryhill, 721 F. App'x 614, 618 (9th Cir. 2017).

**3.    Summary**

In sum, the decision below did not provide specific and legitimate reasons for rejecting the opinions of Drs. Sherman and Scheibel.  On remand, the ALJ shall reevaluate the weight to be afforded these opinions.

**B.    The ALJ's Reasons for Discrediting Plaintiff's Subjective**
**Symptom Testimony Were Not Supported By Substantial Evidence**

On February 9, 2014, Plaintiff submitted an Adult Function Report.  (AR 304-12).  He asserted that pain from his physical ailments, along with anxiety, prevents him from sound, restive sleep.  (AR 305).  His depression and anxiety affect his memory and ability to focus, concentrate, and complete tasks.  (AR 308-09).  He "frequently make[s] errors, forget[ing] steps needed to produce results."  (AR 309).  Plaintiff avoids crowds and does not handle stress or changes in routine well.  (AR 310).  He is prescribed clonazepam and buspirone to help with focus and concentration.[8]  (AR 311).

On July 29, 2014, Plaintiff reported to the Agency that his anxiety and depression "are much worse," dictating an increase in his clonazepam and buspirone dosages.  (AR 329, 330, 334).  On December 4, 2014, Plaintiff asserted that his anxiety and depression "have significantly increased, along with insomnia." (AR 339).  He reported memory loss and an inability to concentrate. (AR 339, 345).

On September 22, 2016, Plaintiff testified that he is unable to work due to "chronic depression."  (AR 40).  He has no motivation

---

[8]    Clonazepam is a benzodiazepine that is used to treat anxiety disorders and agoraphobia.  Buspirone is used to treat anxiety symptoms, including fear, tension, and irritability. <www.drugs.com> (last visited April 23, 2019).

and cannot maintain focus. (AR 40). Plaintiff also has "major issues with anxiety." (AR 41). He cannot handle pressure or stress, causing him to lose his temper. (AR 41). He takes Wellbutrin, BuSpar (buspirone), Klonopin (clonazepam), and Valium for his depression and anxiety,[9] but he still lacks motivation and is unable to concentrate.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo, 871 F.3d at 678. First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison, 759 F.3d at 1014. "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted);

---

[9]    Wellbutrin (bupropion) is an antidepressant medication used to treat major depressive disorder. Valium (diazepam) is a benzodiazepine used to treat anxiety disorders. <www.drugs.com> (last visited April 23, 2019).

see also <u>Smolen</u>, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." <u>Garrison</u>, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

<u>Ghanim</u>, 763 F.3d at 1163 (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1137 (9th Cir. 2014); <u>Light v.</u>

Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's depression and anxiety are medically determinable impairments, and he made no finding of malingering. (AR 18). Nevertheless, the ALJ concluded that "there

25

was very little in the way of objective medical evidence to corroborate [Plaintiff's] subjective allegations." (AR 18). The Court disagrees with the ALJ's conclusion here. The Ninth Circuit has consistently held that an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." Reddick, 157 F.3d at 722; accord Bray, 554 F.3d at 1227; Kelly v. Berryhill, 732 F. App'x 558, 563 (9th Cir. 2018).

Defendant contends that "[t]he ALJ appropriately found Plaintiff's symptoms and limitation allegations not fully supported by the record," generally citing to the decision and the hearing transcript. (Dkt. No. 21 at 4). However, the court is "constrained to review the reasons the ALJ asserts." Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)). The court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison, 759 F.3d at 1010. Indeed, "the inconsistencies identified independently [of the ALJ] cannot provide the basis upon which we can affirm the ALJ's decision." Brown-Hunter, 806 F.3d at 494. While the ALJ thoroughly discussed the medical record in rejecting Plaintiff's physical symptoms (AR 20-23), the ALJ did not identify any specific medical records that contradicted Plaintiff's mental symptoms. See id. ("This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited.").

Nor did the decision below identify any prior inconsistent statements, inconsistencies between Plaintiff's testimony and conduct, internal contradictions, or other proper techniques for credibility evaluation in discounting Plaintiff's subjective mental symptoms.[10] See Burrell, 775 F.3d at 1137; Ghanim, 763 F.3d at 1163; Light, 119 F.3d at 792. Because the ALJ failed to identify the medical evidence that undermined Plaintiff's subjective mental statements, he failed to support his non-credibility determination. This was legal error. See Brown-Hunter, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."). In any event, Plaintiff's subjective statements were largely corroborated by the findings of his treating physicians, as discussed above.

In sum, the decision below failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptoms. The matter is remanded for further proceedings. On remand, the ALJ shall reevaluate Plaintiff's symptoms in accordance with the current version of the

---

[10]    Defendant contends that "the ALJ did not assess Plaintiff's 'credibility.'" (Dkt. No. 21 at 5). Instead, "the ALJ assessed what medical evidence might support Plaintiff's allegations." (Id.). However, the ALJ explicitly concluded that Plaintiff's depression and anxiety were medically determinable impairments." (AR 18). Thus, the ALJ could reject Plaintiff's subjective statements only "by making specific findings as to [Plaintiff's] credibility and stating clear and convincing reasons for each [finding]." Robbins, 466 F.3d at 883.

Agency's regulations and guidelines, taking into account the full range of medical evidence.

C.  **The ALJ Failed To Properly Assess Plaintiff's Depression And Anxiety As Severe Impairments At Step Two Of The Evaluation**

Plaintiff contends that the ALJ erred at step two by finding that his depression and anxiety were non-severe impairments. (Dkt. No. 18 at 4-8).  The Court agrees.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments.  See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987) (O'Connor, J., concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a de minimis screening device to dispose of groundless claims.").  Further, at step two, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."  Smolen, 80 F.3d at 1290 (citation omitted); see SSR 85-28.  An impairment is not severe "only if the evidence establishes a slight abnormality that has not more than a minimal effect on an individual's ability to work." Smolen, 80 F.3d at 1290 (citation omitted).  "Thus, applying [the Court's] normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or

combination of impairments." Webb v. Barnhart, 433 F.3d 683, 687
(9th Cir. 2005).

According to the Commissioner's regulations, "[a]n impairment
or combination of impairments is not severe if it does not
significantly limit your physical or mental ability to do basic
work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). "Basic
work activities are abilities and aptitudes necessary to do most
jobs, including, for example, walking, standing, sitting, lifting,
pushing, pulling, reaching, carrying or handling." Smolen, 80 F.3d
at 1290 (citation omitted); see 20 C.F.R. §§ 404.1522(b),
416.922(b); SSR 85-28. Nevertheless, the Commissioner has
emphasized that "[g]reat care should be exercised in applying the
not severe impairment concept." SSR 85-28, at *4. Accordingly,
if the ALJ is "unable to determine clearly the effect of an
impairment or combination of impairments on the individual's
ability to do basic work activities, the sequential evaluation
process should not end with the not severe evaluation step." Id.
(emphasis added). Instead, the sequential evaluation process
should continue through steps three, four, and five to "evaluate
the individual's ability to do past work, or to do other work based
on the consideration of age, education, and prior work experience."
Id.

Here, the ALJ applied more than a de minimis test at step two
when he determined that Plaintiff's major depression is non-severe.
To reach this non-severity finding, the ALJ concluded that because
Plaintiff's medically determinable mental impairments cause no more

29

than "mild" limitations in any of the three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth functional area, Plaintiff's depression and anxiety are nonsevere. (AR 18-19). However, in evaluating whether the decision is supported by substantial evidence, the court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the [Agency's] conclusion." Winans v. Bowen, 853 F.2d 643, 644 (9th Cir. 1987). This is especially the case when evaluating mental impairments, which by their nature tend to "wax and wane in the course of treatment." Garrison, 759 F.3d at 1017.

As discussed above, the decision below overlooked certain medical evidence regarding Plaintiff's depression and anxiety. Because a step-two evaluation is to dispose of "groundless claims," and the evidence here established that Plaintiff suffered from a significant depression and anxiety, the ALJ erred by finding Plaintiff's depression and anxiety to be "non-severe." This is not the "total absence of objective evidence of severe medical impairment" that would permit us to affirm "a finding of no disability at step two." Webb, 433 F.3d at 688 (reversing a step-two determination "because there was not substantial evidence to show that Webb's claim was 'groundless'"). The evidence in the record was sufficient for the ALJ to conclude that Plaintiff's depression and anxiety were severe impairments at step two under the de minimis test.

1    For the foregoing reasons, the matter is remanded for further

2  proceedings.    On  remand,  the  ALJ  must  evaluate  Plaintiff's

3  depression  and  anxiety  as  severe  impairments  at  step-two  and

4  include limitations imposed by Plaintiff's depression and anxiety

5  in the ALJ's overall evaluation of Plaintiff.  The ALJ must consider

6  the impact of Plaintiff's depression and anxiety on his RFC.

7

8                                  **VI.**

9                              **CONCLUSION**

10

11    Accordingly, IT IS ORDERED that Judgment be entered REVERSING

12  the  decision  of  the  Commissioner  and  REMANDING  this  matter  for

13  further proceedings consistent with this decision.   IT IS FURTHER

14  ORDERED that the Clerk of the Court serve copies of this Order and

15  the Judgment on counsel for both parties.

16

17  DATED:  April 25, 2019

18

19

20

21                              _____/S/_____
                              SUZANNE H. SEGAL
22                              UNITED STATES MAGISTRATE JUDGE

23  **THIS  DECISION  IS  NOT  INTENDED  FOR  PUBLICATION  IN  WESTLAW,**
    **LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**
24

25

26

27

28

31